1 | SHEPPARD MULLIN RICHTER & HAMPTON LLP
JILL M. PIETRINI (Cal. Bar No. 138335)
2 | BENJAMIN O. AIGBOBOH (Cal. Bar No. 268531)
1901 Avenue of the Stars, Suite 1600
3 | Los Angeles, California 90067-6055
Telephone:   310.228.3700
4 | Facsimile:   310.228.3701
Email:       jpietrini@sheppardmullin.com
5 |            baigboboh@sheppardmullin.com

6 | *Attorneys for Plaintiff* GUNS N' ROSES

7

8 | UNITED STATES DISTRICT COURT
9 | CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION
10

| | |
|---|---|
| GUNS N' ROSES, a California partnership, | Case No. 2:19-cv-4052 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **(1)  TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114;** |
| CANARCHY CRAFT BREWERY COLLECTIVE LLC, dba OSKAR BLUES BREWERY, a Colorado Limited Liability Company | **(2)  FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);** |
| Defendant. | **(3)  TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);** |
| | **(4)  COMMON LAW TRADEMARK INFRINGEMENT;** |
| | **(5)  UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*;** |
| | **(6)  COMMON LAW UNFAIR COMPETITION; AND** |
| | **(7)  MISAPPROPRIATION OF RIGHT OF PUBLICITY IN VIOLATION OF CAL. CIV. CODE § 3344 AND COMMON LAW.** |
| | **DEMAND FOR JURY TRIAL** |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Guns N' Roses ("GNR") for their Complaint against Defendant CANarchy Brewery Collective LLC, doing business as Oskar Blues Brewery ("Defendant"), and Does 1-10, alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.*, and California statutory and common law.  The Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over claims arising under California law because all of the claims herein arise out of a common nucleus of facts.

2.      Venue is proper under 28 U.S.C. § 1391(b) because, upon information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendant is subject to personal jurisdiction in this District.

## THE PARTIES

3.      GNR is a musical group and partnership organized and existing under the laws of the state of California with their principle place of business in Los Angeles, California.  GNR's general partners are W. Axl Rose ("Axl Rose"), Saul Hudson, pka Slash, and Michael McKagan.

4.      Upon information and belief, Defendant is a Colorado limited liability company with its principle place of business Longmont, Colorado and that is registered to do business in California.

5.      The true names, identities and capacities, whether individual, associate, corporate or otherwise, of Defendants DOES 1 to 10, inclusive, and each of them (the "DOE Defendants"), are unknown to GNR at this time, who therefore sues the DOE Defendants by such fictitious names.  When the true names and capacities or participation of the DOE Defendants are ascertained, GNR will amend this complaint to assert the true names, identities and capacities.  GNR is informed and believes and

-1-

thereon alleges that each of the DOE Defendants sued herein is responsible for the wrongful acts alleged herein, and is therefore liable to GNR in some manner for the events and happenings alleged in this Complaint.  GNR is informed and believes and thereon alleges that at all times herein mentioned, the DOE Defendants were and are doing business and/or residing in this District.

## FACTUAL BACKGROUND

**A.**   **GNR's Three Decades of Worldwide Success Under the Famous GUNS N' ROSES Trademark**

6.     In 1984, GNR's co-founders Tracii Guns and Axl Rose combined their respective bands "LA Guns" and "Hollywood Rose" to form the band "Guns N' Roses."  Since the formation, GNR has achieved national and international renown as one of the greatest, and most commercial and critically successful, bands of all time.

7.     GNR's debut studio album, *Appetite for Destruction*, was released in 1987.  On the strength of their famous and iconic songs -- including "Welcome to the Jungle," "Sweet Child O' Mine," and "Paradise City" -- *Appetite for Destruction* reached number one on the *Billboard* 200, *Billboard* magazine's chart ranking the 200 most popular albums in the United States, in 1988.

8.     Since its release, *Appetite for Destruction* has sold at least 30 million copies worldwide.  This includes at least 18 million copies sold in the United States, which makes *Appetite for Destruction* the best-selling debut album, and one of the best-selling albums period, of all time in the United States.  Among other critical accolades, *Appetite for Destruction* was ranked number 62 on *Rolling Stone*'s list of the 500 Greatest Albums of All Time and number 42 on VH1's list of the best 100 albums in rock and roll history, and has been repeatedly hailed by music critics and fans as one of greatest rock and roll albums of all time.

9.     GNR's subsequent studio albums -- *G N' R Lies* (1988), *Use Your Illusion I* (1991), *Use Your Illusion II* (1991), *"The Spaghetti Incident"* (1993), and *Chinese Democracy* (2008) -- have sold, at least, 20 million copies collectively in the

United States alone since their release.  As with *Appetite for Destruction*, each of GNR's subsequent studio albums has been the subject of critical praise in publications such as *Entertainment Weekly*, *Rolling Stone*, *Los Angeles Times*, *Chicago Tribune, Spin*, and *NME*.

10.    In addition to and in connection with its recorded musical output, GNR has created some of the most iconic and popular music videos of all-time.  As of May 7, 2019, the official music videos for GNR songs "Welcome to the Jungle," "Paradise City," "Sweet Child O' Mine," and "November Rain" have been collectively viewed nearly 3 *billion* times on YouTube, alone.  The excellence of GNR's music videos has been widely acknowledged, including by seminal music television channel MTV when it awarded GNR a Video Vanguard Award to recognize their accomplishments in music and film.

11.    GNR, and their recorded music and music videos, have been nominated for and won numerous awards including American Music Awards (eight nominations and four wins), Billboard Music Awards (six nominations and one win), Grammy Awards (four nominations), and MTV Video Music Awards (nine nominations and four wins).

12.    GNR's live performances, in the United States and abroad, have also been massively successful.  In addition to performing and touring with some of the greatest acts in popular music's history -- including Metallica and Aerosmith -- GNR has headlined national and international tours that have been attended by millions of people and earned hundreds of millions of dollars.  By way of example, GNR's *Not in This Lifetime… Tour* -- which ran from April 2016 to December 2018, included more than 150 shows in the United States and worldwide, and featured a headlining performance at the world-famous Coachella Festival -- grossed more than $563 million, making it one of the highest-grossing tours of all time.  Among other accolades, GNR's *Not in This Lifetime… Tour* won "Top Tour/Top Draw" at the 2017 Billboard Touring Awards, nominated for "Top Rock Tour" at the 2017 Billboard

Music Awards, and was awarded the inaugural Ticketmaster Touring Milestone Award in 2019.

13. Due to their more than three decades of musical excellence and success, GNR was inducted into the Rock & Roll Hall of Fame in 2012 -- their first year of eligibility for induction -- taking their place alongside music legends such as James Brown, Ray Charles, Elvis Presley, Aretha Franklin, The Beatles, Bob Dylan, The Rolling Stones, Stevie Wonder, Bob Marley, Johnny Cash, The Jimi Hendrix Experience, Led Zeppelin, Queen, The Ramones, and Prince.

14. Given their fame and renown, GNR and their music have been the subject of considerable press and public comment over the course of their three-plus decade existence, including countless articles in world-famous magazines like *Rolling Stone*, and hundreds of books, television shows, and films. GNR and their music have also been prominently featured in television shows, films (including the blockbuster *Terminator 2: Judgment Day*), and video games such as *Guitar Hero*.

15. GNR, themselves or through their licensees, has also successfully offered to sell and sold a variety of "Guns N' Roses" -- branded products to consumers. This includes, but is not limited, clothing and related accessories such as t-shirts, hats, patches, stickers, buttons, and bandannas -- an item uniquely associated with GNR and their co-founder and lead singer Axl Rose, who has famously worn bandannas for decades. This also includes items used for and related to the imbibing of alcohol including wine glasses, pint glasses, beer "koozies" (sleeves used to keep beer cans cold), and shot glasses.

16. GNR is the owner of the following incontestable federal trademark registrations of the mark GUNS N' ROSES, true and correct copies of which are attached hereto as **Exhibit A**:

| **Reg. No.** | **Class and Goods/Services** | **Reg. Date** |
|---|---|---|
| 1,762,599 | Class 9: Prerecorded video and audio tapes, prerecorded phonograph records and | April 6, 1997 |

| Reg. No. | Class and Goods/Services | Reg. Date |
|---|---|---|
|  | prerecorded compact discs all featuring music. |  |
| 1,766,309 | Class 41:  Entertainment services; namely, performances by a musical group. | April 20, 1993 |
| 2,035,815 | Class 25:  Clothing, namely, T-shirts, shirts, hats, caps, bandannas, sweatpants, and thermal shirts | February 4, 1997 |

17.    By virtue of their use of the GUNS N' ROSES mark over the course of three decades, GNR also has common law rights in the GUNS N' ROSES mark for a broad range of goods and services including, but not limited to, the goods and services identified herein.

18.    GNR and/or persons or entities acting on their behalf and direction and/or with their consent have undertaken significant efforts to market GNR, their marks, their music, their live performances, and their merchandise through various channels including, but not limited to, traditional media and social media.  GNR's *Not in This Lifetime… Tour* was marketed throughout the United States and abroad in various channels including television, radio, print, and online.  GNR's social media following evidences the success of these (and other) efforts undertaken over the course of thirty years.  As of May 7, 2019, GNR's official Facebook page (available at the domain <facebook.com/gunsnroses>) has more 27 million Followers and 29 million "Likes," official Instagram account (available at the domain <instagram.com/gunsnroses>) has more than 3.9 million Followers, and official Twitter account (available at the domain <twitter.com/gunsnroses>) has more than 6.2 million Followers.

**B.    Defendant and its Infringing Activities**

19.    On information and belief, Defendant is a brewery that sells beer and merchandise throughout the United States and operates bars and/or restaurants in several states in the United States.

20.    On information and belief, Defendant has offered to sell and sold craft beer under the mark GUNS 'N' ROSE in canned and keg form since at least as early as 2018 without GNR's approval, license, or consent.  A true and correct copy of the label for the canned version of Defendant's GUNS 'N' ROSE beer is reproduced below:



21.    Defendant has also offered to sell and sold various merchandise under and bearing the mark GUNS 'N' ROSÉ, including hats, t-shirts, pint glasses, stickers, buttons, and bandannas, without GNR's approval, license, or consent.   True and correct copies of product listings for Defendant's GUNS 'N' ROSÉ hats, t-shirts, pint glasses, stickers, buttons, and bandannas, which were printed from Defendant's webstore available at the domain <store.oskarblues.com> on May 6, 2019, are attached hereto as **Exhibit B**.

22.    On August 2, 2018, Defendant filed an application to register the mark GUNS N ROSE (Application No. 88/062,803) for beer with the United States Patent and Trademark Office (the "PTO").   A true and correct copy of Defendant's trademark application is attached hereto as **Exhibit C**.

23.     In December 2018, GNR, through their business manager, contacted Defendant informally and spoke with Defendant's Chief Executive Officer and set forth GNR's claims and attempted to resolve this dispute short of escalating the matter to counsel.  Defendant rejected GNR's claims.

24.     Following the call with Defendant's Chief Executive Officer, on December 21, 2018, GNR sent Defendant a letter requesting that, among other things, it cease its authorized use GUNS N ROSE or any other marks confusingly similar to the GUNS N' ROSES mark, and abandon its application to register the GUNS N ROSE mark.  A true and correct copy of GNR's December 21, 2018 letter is attached hereto as **Exhibit D**.

25.     Defendant responded to GNR's December 21, 2018 letter on January 22, 2019.   Instead of agreeing to GNR's requests, Defendant, in terse and conclusory terms, denied GNR's claims and concluded that "its response…resolves this matter." A true and correct copy of Defendant's January 22, 2019 letter is attached hereto at **Exhibit E**.

26.     Tellingly, Defendant did not contend in its January 22, 2019 letter that it was not aware of GNR or their GUNS N' ROSES trademark at the time it selected and adopted the GUNS 'N' ROSÉ mark (which appears on Defendant's goods) or the GUNS N ROSE mark (which is the subject of Defendant's August 2, 2018 application field with the PTO).

27.     Defendant's professed ignorance of "any instances of a musical artist or group using its name as the name of a beer" was belied by GNR's December 21, 2018 assertion that "many musical artists and entertainers have expanded or intend to expand in alcoholic beverages" including GNR contemporaries Metallica, AC/DC, Deftones, Anthrax, Iron Maiden, Motörhead, and Mastodon.  This practice is common with "hard rock," "heavy metal," and "rock and roll" bands -- genres with which GNR is commonly associated and into which they are often classified.   At least one purchaser of Defendant's GUNS 'N' ROSÉ beer made this connection in an

Instagram post about "having [a] beerchella" by drinking Metallica-branded, Sex Pistols-branded, Grateful Dead-branded, and Defendant's GUNS 'N' ROSÉ beer:



28.    GNR responded to Defendant's January 22, 2019 letter on March 13, 2019.  A true and correct copy of GNR's March 13, 2019 letter is attached hereto as **Exhibit F**.  Not only did GNR reiterate their December 21, 2018 requests, it noted that Defendant's GUNS 'N' ROSÉ merchandise, of which GNR had only recently become aware and in which GNR indisputably holds prior registered rights, exacerbated the likelihood of confusion and association.  This merchandise includes Defendant's GUNS 'N' ROSÉ buttons, which are commonly offered by musical groups, bands, and artists.  It also includes Defendant's GUNS 'N' ROSÉ bandannas -- the only bandannas offered for sale by Defendant despite the fact it offers merchandise for several of its other beer "brands."  Given that bandannas are uniquely associated with GNR and their lead singer and general partner Axl Rose, and that the only bandannas offered by Defendant are GUNS 'N' ROSÉ bandannas, it is clear that Defendant intended to further associate itself and its products with GNR in order to freeride off GNR's goodwill, prestige, and reputation.

29.    On December 31, 2018, Defendant changed its name from Oskar Blues Brewery, LLC to CANarchy Craft Brewery Collective LLC.  On March 25, 2019 and

after the cease and desist correspondence with GNR, Defendant recorded the change of name against Defendant's application to register GUNS N ROSE with the PTO.

30.     On March 26, 2019, GNR instituted an opposition proceeding before the PTO's Trademark Trial and Appeal Board (the "TTAB"), opposing Defendant's application to register the mark GUNS N ROSE based on, among other things, its prior rights in the GUNS N' ROSES mark.  A true and correct copy of GNR's notice of opposition, without exhibits, in the TTAB proceeding is attached hereto as **Exhibit G**.

31.     That same day, Defendant responded to GNR's March 13, 2019 letter. A true and correct copy of Defendant's March 26, 2019 letter is attached hereto as **Exhibit H**.  Despite agreeing to expressly abandon to its application to register the mark GUNS N ROSE and not use any marks incorporating the terms GUNS N ROSÉ or GUNS N ROSES in the future, Defendant stated that it would continue to sell and market GUNS 'N' ROSÉ beer, clothing, or other products through March 2020.

32.     Five weeks later, on May 1, 2019, Defendant filed an express abandonment of its application in the TTAB opposition proceeding, expressly abandoning its application to register the mark GUNS N ROSE with prejudice.

33.     On May 7, 2019, the TTAB sustained GNR's opposition to Defendant's application to register the GUNS N ROSE mark, entered judgment in GNR's favor, and refused registration of the GUNS N ROSE mark.  A true and correct copy of the TTAB's May 7, 2019 order is attached hereto as **Exhibit I**.

34.     Notwithstanding Defendant's express abandonment of its application to register the mark GUNS N ROSE and the TTAB's order, Defendant has refused to immediately and completely cease sales and marketing of GUNS 'N' ROSÉ beer, clothing, or other products until March 2020.  As of the filing of this Complaint, Defendant's GUNS N ROSE beer continues to be sold at retailers such as BevMo, and Defendant's infringing GUNS N ROSE merchandise continues to be sold on Defendant's website.  Defendant should not be entitled to continue to sell infringing

products and intentionally trade on the GNR's goodwill, prestige, and fame without GNR's approval, license, or consent.

## FIRST CAUSE OF ACTION

### (Trademark Infringement in Violation of 15 U.S.C. §§ 1114)

35.    GNR repeats and realleges each and every allegation of Paragraphs 1 through 34, above, as though fully set forth herein.

36.    GNR owns valid and subsisting federal and common law rights in the mark GUNS N' ROSES, including three incontestable federal registrations of the mark for a variety of goods and services.

37.    Defendant has used in commerce, without GNR's permission or authorization, the GUNS N' ROSES mark or marks confusingly similar thereto specifically, the marks GUNS N ROSE and/or GUNS 'N' ROSÉ -- in a manner that is likely to cause confusion with respect to the source and origin of Defendant's goods and is likely to cause confusion or mistake and to deceive purchasers as to GNR's affiliation, connection, or association with, or approval or sponsorship of, Defendant, its business, and/or its goods.

38.    Defendant's acts constitute infringement of GNR's GUNS N' ROSES trademark in violation of 15 U.S.C. § 1114.

39.    As a direct and proximate result of Defendant's wrongful acts, GNR has suffered and continues to suffer and/or is likely to suffer damage to their trademarks, business reputation, and goodwill.  Defendant will continue to use, unless restrained, the GUNS N' ROSES mark or marks confusingly similar thereto, and will cause irreparable damage to GNR.  GNR has no adequate remedy at law and is entitled to an injunction restraining Defendant and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

40.     GNR is further entitled to recover from Defendant the actual damages that GNR has sustained, is sustaining, and/or is likely to sustain as a result of Defendant's wrongful acts.

41.     GNR is further entitled to recover from Defendant the gains, profits, and advantages that Defendant has obtained as a result of its wrongful acts.

42.     Due to the willful nature of Defendant's wrongful acts, GNR is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

43.     Pursuant to 15 U.S.C. § 1117, GNR is also entitled to their costs of suit, and to recover their reasonable attorneys' fees because this is an exceptional case.

## SECOND CAUSE OF ACTION

### (False Designation of Origin and Association in Violation of 15 U.S.C. § 1125(a))

44.     GNR repeats and realleges each and every allegation of paragraphs 1 through 43, above, as though fully set forth herein.

45.     Defendant's unauthorized use of the GUNS N' ROSES mark or marks confusingly similar thereto -- specifically, the marks GUNS N ROSE and/or GUNS 'N' ROSÉ -- in conjunction with Defendant's business and its offering of beer and merchandise, Defendant's false designation of origin, and Defendant's false and misleading descriptions and representations of fact, as alleged herein, are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with GNR, or as to the origin, sponsorship, or approval of Defendant's goods or commercial activities by GNR in violation of 15 U.S.C. § 1125(a).

46.     As a direct and proximate result of Defendant's wrongful acts, GNR has suffered and continues to suffer and/or is likely to suffer damage to their trademarks, trade name, business reputation, and goodwill.  Defendant will continue, unless restrained, to conduct its business and offer products using the GUNS N' ROSES mark or other trademarks confusingly similar thereto and will cause irreparable

damage to GNR.  GNR has no adequate remedy at law and is entitled to an injunction restraining Defendant and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of false designation of origin or association.

47.     GNR is further entitled to recover from Defendant the actual damages GNR has sustained, is sustaining, and/or is likely to sustain as a result of Defendant's wrongful acts.  GNR is presently unable to ascertain the full extent of the monetary damages they have suffered and/or is likely to sustain by reason of Defendant's acts of false designation of origin or affiliation.

48.     GNR is further entitled to recover from Defendant the gains, profits, and advantages Defendant has obtained as a result of its wrongful acts.  GNR is presently unable to ascertain the extent of the gains, profits, and advantages Defendant has realized by reason of its acts of false designation of origin or affiliation.

49.     Due to the willful nature of Defendant's wrongful acts, GNR is entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

50.     Pursuant to 15 U.S.C. §1117, GNR is also entitled to their costs of suit, and to recover their reasonable attorneys' fees because this is an exceptional case.

### THIRD CAUSE OF ACTION

### (Trademark Dilution in Violation of 15 U.S.C.§ 1125(c))

51.     GNR repeats and realleges each and every allegation of Paragraphs 1 through 50, above, as though fully set forth herein.

52.     GNR began using the GUNS N' ROSES mark before Defendant's began promoting and using the marks GUNS N ROSE and/or GUNS 'N' ROSÉ.  The GUNS N' ROSES mark is inherently distinctive and has acquired distinction through GNR's extensive, continuous, and exclusive use of it.

53.     The GUNS N' ROSES mark is famous and distinctive within the meaning of 15 U.S.C. §§ 1125(c)(1) and 1127.

54.     Defendant's use of the GUNS N' ROSE and/or GUNS 'N' ROSÉ mark is likely to dilute by blurring the distinctive quality of the GUNS N' ROSES mark in violation of 15 U.S.C. § 1125(c).

55.     Defendant's acts complained of herein are likely to damage GNR irreparably.  GNR has no adequate remedy at law for such wrongs and injuries.  The damage to GNR includes harm to their trademarks, goodwill, and reputation that money cannot compensate.  GNR is therefore entitled to a preliminary and permanent injunction enjoining Defendant's use of the GUNS N' ROSE mark and the GUNS N' ROSES mark or any marks likely to dilute the GUNS N' ROSES mark in connection with the promotion, advertisement and sale of any goods or services offered by Defendant.

56.     Due to the willful nature of Defendant's actions, GNR is further entitled to recover from Defendant the actual damages sustained by GNR as a result of Defendant's wrongful acts.  GNR is presently unable to ascertain the full extent of the monetary damages they have suffered by reason of Defendant's acts of dilution.

57.     Due to the willful nature of Defendant's actions, GNR is further entitled to recover from Defendant the gains, profits, and advantages Defendant has obtained as a result of its wrongful acts.  GNR is presently unable to ascertain the extent of the gains, profits, and advantages Defendant has realized by reason of its willful acts of dilution.

58.     Pursuant to 15 U.S.C. § 1117, GNR is also entitled to their costs of suit, to recover their reasonable attorneys' fees because this is an exceptional case.

### FOURTH CAUSE OF ACTION

### (Common Law Trademark Infringement)

59.     GNR repeats and realleges each and every allegation of Paragraphs 1 through 58, above, as though fully set forth herein.

60.     Defendant has used in commerce, without GNR's permission or authorization, the GUNS N' ROSES mark or marks confusingly similar thereto --

-13-

specifically, GUNS N ROSE and/or GUNS 'N' ROSÉ mark -- in a manner that is likely to cause confusion with respect to the source and origin of Defendant's goods and is likely to cause confusion or mistake and to deceive purchasers as to GNR's affiliation, connection, or association with, or approval or sponsorship of, Defendant, its business, and/or its goods.

61.    Defendant's acts constitute infringement of the GUNS N' ROSES mark in violation of the common law.

62.    As a direct and proximate result of Defendant's wrongful acts, GNR has suffered and continues to suffer and/or is likely to suffer damage to their trademarks, trade name, business reputation, and goodwill.  Defendant will continue to use, unless restrained, the GUNS N' ROSES mark or marks confusingly similar thereto, and will cause irreparable damage to GNR.  GNR has no adequate remedy at law and is entitled to an injunction restraining Defendant and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

63.    GNR is further entitled to recover from Defendant the actual damages GNR has sustained, is sustaining, and/or is likely to sustain as a result of Defendant's wrongful acts.

64.    GNR is further entitled to recover from Defendant the gains, profits, and advantages Defendant has obtained as a result of its wrongful acts.

65.    Upon information and belief, Defendant has engaged in the conduct alleged above with oppression, fraud and malice.  Accordingly, GNR is entitled to an award of punitive damages pursuant to Cal. Civ. Code § 3294 in an amount to be proved at trial.

## **FIFTH CAUSE OF ACTION**

### **(Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

66.    GNR repeats and realleges each and every allegation of Paragraphs 1 through 65, above, as though fully set forth herein.

-14-

67. By reason of the foregoing, Defendant has been, and is, engaged in unlawful business practices in violation of §§ 17200 *et seq.* of the California Bus. & Prof. Code.

68. Defendant's acts complained of herein have injured and will continue to injure GNR irreparably. GNR has no adequate remedy at law for these wrongs and injuries. The injury to GNR includes harm to their GUNS N' ROSES mark, goodwill, and reputation in the marketplace that money cannot compensate. GNR is therefore entitled to:

(a) injunctive relief restraining and enjoining Defendant and, as applicable, its officers, members, agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using the GUNS N' ROSES mark or any mark, name, symbol, or logo which is confusingly similar thereto, in connection with the marketing or sale of any goods or services by Defendant; and

(b) restitution of Defendant's profits earned from its unauthorized use of the GUNS N' ROSES mark or any mark, name, symbol, or logo which is confusingly similar thereto, in which profits GNR has a vested interest.

## SIXTH CAUSE OF ACTION

### (Common Law Unfair Competition)

69. GNR repeats and realleges each and every allegation of Paragraphs 1 through 68, above, as though fully set forth herein.

70. GNR invested substantial time and money in their development of the GUNS N' ROSES mark.

71. Defendant used the GUNS N' ROSES mark or marks confusingly similar thereto -- specifically, the GUNS N ROSE and/or GUNS 'N' ROSÉ mark -- to build its business and/or pass off its products as GNR's without GNR's authorization.

72.    Defendant passed off its goods offered under the GUNS N' ROSES mark or marks confusingly similar thereto -- specifically, the GUNS N ROSE and/or GUNS 'N' ROSÉ mark -- in a manner likely to cause confusion as to the source of Defendant's goods or as to GNR's association or affiliation with, or sponsorship of, Defendant's goods.

73.    As a direct and proximate result of Defendant's wrongful acts, GNR has suffered and continues to suffer and/or is likely to suffer damage to their trademarks, trade name, business reputation, and goodwill.  Defendant will continue, unless restrained, to pass off its business as GNR's and to conduct its business and offer goods using the GUNS N' ROSES mark or other trademarks confusingly similar thereto and will cause irreparable damage to GNR.  GNR has no adequate remedy at law and is entitled to an injunction restraining Defendant and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of unfair competition.

74.    GNR is further entitled to recover from Defendant the actual damages GNR has sustained, is sustaining, and/or is likely to sustain as a result of Defendant's wrongful acts.  GNR is presently unable to ascertain the full extent of the monetary damages they have suffered and/or are likely to sustain by reason of Defendant's acts of unfair competition.

75.    GNR is further entitled to recover from Defendant the gains, profits, and advantages Defendant has obtained as a result of its wrongful acts.  GNR is presently unable to ascertain the extent of the gains, profits, and advantages Defendant has realized by reason of its acts of unfair competition.

76.    Upon information and belief, Defendant has engaged in the conduct alleged above with oppression, fraud and malice.  Accordingly, GNR is entitled to an award of punitive damages pursuant to Cal. Civ. Code § 3294 in an amount to be proved at trial.

**SEVENTH CAUSE OF ACTION**

**(Misappropriation of Right of Publicity in Violation Cal. Civ. Code § 3344 and Common Law)**

77.     GNR repeats and realleges each and every allegation of Paragraphs 1 through 76, above, as though fully set forth herein.

78.     Due to their more than three decades of hard work and near-unprecedented success, GNR's "Guns N' Roses" name has substantial commercial value and possesses considerable goodwill in the eyes of the public, in general, and purchasers of recorded music, concert tickets, and merchandise.

79.     Defendant has knowingly misappropriated GNR's name, and is using it on products, merchandise, and goods, and for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without GNR's consent.

80.     Defendant's actions constitute misappropriation of GNR's and its members' (most notably Axl Roses') right of publicity in violation of Cal. Civ. Code § 3344 and California common law.

81.     As a direct and proximate result of Defendant's wrongful acts, GNR GNR's and its members' (most notably Axl Roses') have suffered and continues to suffer and/or is likely to suffer damage to their name, reputation, and goodwill. Defendant will continue, unless restrained, to use GNR's name, without authorization, on products, and for purposes of advertising or selling, or soliciting purchases of products.  GNR has no adequate remedy at law and is entitled to an injunction restraining Defendant and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of misappropriation of GNR's right of publicity.

82.     GNR is further entitled to recover from Defendant the actual damages GNR has sustained, is sustaining, and/or is likely to sustain as a result of Defendant's misappropriation of GNR's right of publicity.  GNR is presently unable to ascertain

-17-

the full extent of the monetary damages they have suffered and/or are likely to sustain by reason of Defendant's misappropriation of their right of publicity.

83.    GNR is further entitled to recover from Defendant the gains, profits, and advantages Defendant has obtained as a result of its unauthorized use of GNR's name. GNR is presently unable to ascertain the extent of the gains, profits, and advantages Defendant has realized by reason of its misappropriation of GNR's right of publicity.

84.    Upon information and belief, Defendant has engaged in the conduct alleged above with oppression, fraud and malice.  Accordingly, GNR is entitled to an award of punitive damages pursuant to Cal. Civ. Code §§ 3294 and 3344(a) in an amount to be proved at trial.

85.    Pursuant to Cal. Civ. Code § 3344(a), GNR is also entitled to recover its attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, GNR prays that this Court enter judgment against Defendant as follows:

1.    Finding that Defendant has:  infringed the GUNS N' ROSES mark under 15 U.S.C. § 1114 and the common law; violated 15 U.S.C. § 1125(a); diluted the GUNS N' ROSES mark under 15 U.S.C. § 1125(c); violated Cal. Bus. & Prof. Code § 17200 by engaging in unlawful business practices; committed unfair competition under the common law; and misappropriated GNR's name in violation of Cal. Civ. Code § 3344 and the common law;

2.    Ordering that Defendant and, as applicable, its officers, agents, servants, directors, employees, servants, partners, representatives, assigns, successors, related companies, and attorneys and all persons in active concert or participation with Defendant or with any of the foregoing be enjoined preliminarily during the pendency of this action and permanently thereafter from:

(a)    Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any goods or services offered

under the GUNS N ROSE or GUNS 'N' ROSÉ marks, the GUNS N' ROSES mark, or any other mark, name, symbol, or logo, which is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any goods or services that Defendant caused to enter the stream of commerce or any of Defendant's commercial activities are sponsored or licensed by GNR, are authorized by GNR, or are connected or affiliated in some way with GNR or the GUNS N' ROSES mark;

(b)    Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any goods or services offered under the GUNS N ROSE or GUNS 'N' ROSÉ marks, the GUNS N' ROSES mark, or any other mark, name, symbol, or logo that is a copy or colorable imitation of, incorporates, or is confusingly similar to the GUNS N' ROSES mark;

(c)    Implying GNR's approval, endorsement, or sponsorship of, or affiliation or connection with, Defendant's goods, services, or commercial activities, passing off Defendant's products as that of GNR's, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with GNR and from otherwise interfering with or injuring the GUNS N' ROSES mark or the goodwill associated therewith;

(d)    Engaging in any act which is likely to dilute the distinctive quality of the GUNS N' ROSES mark;

(e)    Representing or implying that Defendant is in any way sponsored by, affiliated with, or licensed by GNR;

(f)    Misappropriating GNR's "Guns N' Roses" name and/or using GNR's name on products, merchandise, and goods, or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without GNR's consent.

(g)    Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in Paragraphs 2(a) to (f) above.

3.     Ordering that Defendant be required to deliver to GNR for destruction any and all products, merchandise, digital files, packaging, printed graphics, promotional materials, business cards, signs, labels, advertisements, flyers, circulars, and any other items in any of its possession, custody, or control bearing the GUNS N ROSE or GUNS 'N' ROSÉ marks, the GUNS N' ROSES mark, or any other mark, name, symbol, or logo that is a copy or colorable imitation of, incorporates, or is confusingly similar to the GUNS N' ROSES mark;

4.     Ordering that Defendant be required to recall and deliver to GNR for destruction any and all products bearing the GUNS N ROSE or the GUNS 'N' ROSÉ marks or the GUNS N' ROSES mark from retailers or distributors to which it sold such products;

5.     Granting an award of damages suffered by GNR according to proof at the time of trial;

6.     Ordering that Defendant account to GNR for any and all profits earned as a result of Defendant's acts in violation of GNR's rights under the Lanham Act and the common law and misappropriation of GNR's right of publicity in violation of Cal. Civ. Code § 3344;

7.     Granting an award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

8.     Ordering restitution of Defendant's profits earned from its unauthorized use of the GUNS N' ROSES mark or any mark, name, symbol, or logo which is confusingly similar thereto, in which profits GNR has a vested interest, pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*;

9.     Granting an award of punitive damages for the willful and wanton nature of Defendant's aforesaid acts under the common law;

10.    For pre-judgment interest on any recovery by GNR;

11.    Granting an award of GNR's costs, expenses, and reasonable attorneys' fees; and

1    12.   Granting such other and further relief as is just and proper.

2                                          Respectfully submitted,

3                                          SHEPPARD MULLIN RICHTER & HAMPTON LLP

4

5    Dated:  May 9, 2019                   By:   /s/Jill M. Pietrini

6                                                Jill M. Pietrini
                                                 Benjamin O. Aigboboh
7
                                                 *Attorneys for Plaintiff* GUNS N' ROSES
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   -21-

1

## **JURY DEMAND**

2

GNR demands a trial by jury of all issues triable by jury.

3

Respectfully submitted,

4

SHEPPARD MULLIN RICHTER & HAMPTON LLP

5

6

Dated:  May 9, 2019

By:     /s/Jill M. Pietrini

7

Jill M. Pietrini
Benjamin O. Aigboboh

8

9

*Attorneys for Plaintiff* GUNS N' ROSES

10

SMRH:490276554.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-22-